**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JENNIFER LYNN MORRIS,**

      Plaintiff,

-vs-

**AON SERVICE CORPORATION,** *a foreign corporation;* **AON RISK SERVICES INC.,** *a foreign corporation; and* **AON RISK SERVICES CENTRAL, INC.**, *a foreign corporation, jointly and severally.*

      Defendants.

**CASE NO. 10-CV-**

**HON.**

---

**DEBORAH L. GORDON, P.L.C.**
Deborah L. Gordon (P27058)
Carol Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
claughbaum@deborahgordonlaw.com

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

**There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.**

Plaintiff **Jennifer Lynn Morris**, by her attorneys **Deborah L. Gordon PLC,** complains against Defendants as follows:

## *Jurisdiction and Parties*

1. This is an action for violations of and retaliation under the Fair Labor Standards Act, wrongful discharge in violation of Michigan public policy ("public policy tort"), and wrongful discharge in violation of the Whistleblowers' Protection Act, arising out of Plaintiff's employment relationship with Defendants.

2. Plaintiff **Jennifer Lynn Morris** ("Plaintiff") is a resident of the Eastern District of Michigan.

3. Defendant **Aon Service Corporation** ("Defendant **Aon Service**"), is a foreign corporation doing business in the Eastern District of Michigan.

4. Defendant **Aon Risk Services** ("Defendant **Aon Risk Services**"), is a foreign corporation doing business in the Eastern District of Michigan.

5. Defendant **Aon Risk Services Central, Inc.** ("Defendant **Aon Central**"), is a foreign corporation doing business in Eastern District of Michigan.

6. Hereafter, **"Defendant Aon"** refers to the Defendants, Plaintiff's employer, collectively.

7. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

8. This Court has subject matter jurisdiction under the Fair Labor Standards Act, 29 USC 206 *et seq.* and 28 U.S.C. §§ 1331, jurisdiction over the state law claims pursuant to 28 USC § 1367 and the matter is otherwise within the jurisdiction of this Court.

## *Factual Allegations*

9. Plaintiff began working for Defendant Aon Service Corporation, in the Aon Warranty Group, in or about April 2002, as a Project Coordinator.

10. In or about March 2006, Plaintiff assumed a new role with Defendant Aon Service Corporation, working in Defendant Aon Risk Services, Inc. as an Administrative Assistant in their Southfield office.

11. In her role, Plaintiff had responsibility for supporting three executives, among other things.

12. In or about 2006, Plaintiff was told her position was nonexempt, and that therefore she should have been paid overtime whenever working over 40 hours per week.

13. Plaintiff's performance was at all times satisfactory or better.

14. Beginning in or about January 2008, Plaintiff began to receive checks that failed to compensate her for the total hours she worked.

15. Although Plaintiff regularly worked 40 hours per week and entered her time sheets to reflect this, Plaintiff's checks varied from pay period to pay period and were sometimes under $300.00 for a two week period.

16. Plaintiff's pay for a two week period should have been in excess of $1000.00.

17. On several occasions Plaintiff's paychecks were so low that she was not paid minimum wage for her 40 hours of work.

18. In or about 2008, Plaintiff's employer changed its name to Aon Risk Services Central, Inc.

19. In or about June 2010, Plaintiff objected to Defendants' continued failure to pay her as required by law.

20. In July 2010, Plaintiff began complaining to Rita Null, the Human Resource Manager for Defendants' Southfield office, about the problems with her pay.

21. In August 2010, Plaintiff contacted Null again complaining about pay of which she was being unlawfully deprived.

22. Plaintiff subsequently spoke with numerous employees in Defendants' departments about the unlawful deprivation of her pay.

23. On or about August 10, 2010, Plaintiff asked Michael Stankard, one of the executives she supported, to sign necessary paperwork to expedite the payment of her wages which Defendants had unlawfully deprived her.

24. Stankard refused and accused Plaintiff of causing the problem with her pay.

25. In or about August 12, 2010, Plaintiff received confirmation from Defendants' representatives that she was in no way responsible for the problems with her pay.

26. As a result, Plaintiff demanded Defendants compensate her for the damage that Defendants had caused by depriving her of her pay.

27. During this time and in contravention of previous statements, Defendants' representatives told Plaintiff that her position was exempt.

28. On or about August 16, 2010, Plaintiff objected to Defendants asking her to determine what damages she was owed, stating "it is up to the employer to keep accurate records and not the employee according to the Wage and Hour Division."

29. On or about August 17, 2010, Plaintiff objected to Defendants' handling of the situation and refusing to take responsibility for their violating the FLSA.

30. On or about August 19, 2010, Plaintiff went to the Vice-President of Defendants' Southfield office and advised him of the situation, and that she would be filing a claim with the U.S. Department of Labor's Wage and Hour Division and proceeding with legal counsel.

31. Three business days after this meeting, Plaintiff received a write up, her first discipline in eight years working for Defendants.

32. That same day, Defendants asserted that they had investigated their violation of the FLSA and determined Plaintiff had been compensated for all hours worked.

33. Plaintiff questioned Defendants' assertion and indicated she would be doing her own analysis.

34. Three days later, Plaintiff was terminated.

## COUNT ONE
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## AND RETALIATION

35. Plaintiff repeats and realleges paragraphs 1 through 34, as though set forth above with the same force and effect as though set forth in full here.

36. Defendants violated the Fair Labor Standards Act (FLSA), 29 USC 206 *et seq*, by withholding pay for hours worked and paying her less than minimum wage, among other things.

37. Plaintiff engaged in protected activity when she objected to Defendants' violations of the FLSA.

38. Defendants were aware that Plaintiff engaged in protected activity.

39. Defendants retaliated against Plaintiff by disciplining her and terminating her employment because of her protected activity.

40. There was a causal connection between Plaintiff's protected activity and Defendants' adverse action in disciplining and terminating Plaintiff.

41. The actions of Defendants, their agents, representatives and employees were intentional and willful, and were in deliberate disregard of and made with reckless indifference to the rights and sensibilities of Plaintiff.

42. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

43. As a further direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; anxiety about her future; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT TWO
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

44. Plaintiff repeats and realleges paragraphs 1 through 43, as though set forth above with the same force and effect as though set forth in full here.

45. During her employment with Defendants, Plaintiff refused to violate or acquiesce in violations of law.

46. In particular, Plaintiff refused to violate or acquiesce in violations of state and federal statutes, including but not limited to the Fair Labor Standards Act and Wages and Fringe Benefits Act, MCL 408.471 *et seq.*

47. Plaintiff's termination was carried out, in part, in retaliation for her refusal to violate or acquiesce in violations of law.

48. Plaintiff's termination violated clearly established public policy of the State of Michigan that an employer may not discharge an employee where the alleged reason for the

       discharge of the employee is the failure or refusal to violate a law in the course of employment.

49. The actions of Defendants, their agents, representatives and employees were intentional and willful, and were in deliberate disregard of and made with reckless indifference to the rights and sensibilities of Plaintiff.

50. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

51. As a further direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; anxiety about her future; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT THREE
## VIOLATION OF MICHIGAN'S WHISTLEBLOWERS' PROTECTION ACT

52. Plaintiff repeats and realleges paragraphs 1 through 51, as though set forth above with the same force and effect as though set forth in full here.

53. Plaintiff was an employee and Defendants were her employer as covered by and within the meaning of the Whistleblowers' Protection Act, MCL 15.361 *et seq*.

54. Defendants were aware that Plaintiff had reported or was about to report violations or suspected violations of law to a public body.

55. Defendants terminated Plaintiff's employment because she had or was about to report violations or suspected violations of law, regulations or rules promulgated pursuant to law to a public body.

56. The violations or suspected violations of law that Plaintiff reported included, but were not limited to, violations of the Fair Labor Standards Acts and Wages and Fringe Benefits Act, MCL 408.471 *et seq.*

57. The retaliatory conduct of Defendants and their agents violated the Whistleblowers' Protection Act.

58. The actions of Defendants, their agents, representatives and employees were intentional and willful, and were in deliberate disregard of and made with reckless indifference to the rights and sensibilities of Plaintiff.

59. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

60. As a further direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; anxiety about her future; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

*Relief Requested*

For all of the foregoing reasons, Plaintiff **Jennifer Lynn Morris** demands judgment against Defendants as follows:

### A. Legal Relief:

1. Compensatory damages in whatever amount she is found to be entitled;

2. Exemplary damages in whatever amount she is found to be entitled;

3. A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled; and,

4. An award of interest, costs and reasonable attorney fees.

### B. Equitable Relief:

1. An order out of this Court reinstating Plaintiff to the position she would have held had there been no wrongdoing by Defendants;

2. An injunction out of this Court prohibiting any further acts of discrimination or retaliation;

3. An award of interest, costs and reasonable attorney fees; and,

4. Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: November 19, 2010

**DEBORAH L. GORDON, PLC**
Deborah L. Gordon (P27058)
/s/Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills Michigan 48304
Telephone 248 258 2500
dgordon@deborahgordonlaw.com
claughbaum@deborahgordonlaw.com

## JURY DEMAND

Plaintiff **Jennifer Lynn Morris** by her attorneys **Deborah L. Gordon, PLC**, demands a trial by jury of all the issues in this case.

Dated: November 19, 2010

**DEBORAH L. GORDON, PLC**
Deborah L. Gordon (P27058)
/s/ Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills Michigan 48304
Telephone 248 258 2500
dgordon@deborahgordonlaw.com
claughbaum@deborahgordonlaw.com