UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER LYNN MORRIS,

          Plaintiff,

Case No. 10 - 14620

v.

Honorable John Corbett O'Meara

AON SERVICE CORPORATION, et al.,

          Defendants.

_____/

## OPINION AND ORDER DENYING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the court is Defendants' September 1, 2011 motion for summary judgment. The motion has been fully briefed by both parties. The court heard oral argument on October 27, 2011, and took the matter under advisement. For the reasons explained below, the court now denies Defendants' motion.

## BACKGROUND FACTS

Plaintiff Jennifer Morris ("Morris") was an administrative assistant for Defendants Aon Service Corporation, et al., ("Aon"). Morris filed the present action for wrongful termination on November 19, 2010, under the Fair Labor Standards Act, the Michigan Whistleblowers Protection Act, and for tortious violation of public policy.

Morris began working for Aon in 2002 and contends that between January 2008 and July 2010 she routinely received less than her full and proper pay from Aon. Morris asserts that she was ultimately discharged from her employment with Aon in August 2010 in retaliation for pursuing her back pay.

During the course of her employment with Aon, Morris received favorable performance reviews, raises, bonuses, and employee awards recognizing her for high achievement. Morris received a "meets expectations" performance rating and an above-average raise in April 2010, before her termination in August 2010. After attempting to cure her pay issues internally, Morris announced on August 19, 2010, that she had instituted an external complaint with the Wage and Hour Division of the U. S. Department of Labor ("Wage and Hour"). She was fired eight days later on August 27, 2010.

Aon does not deny that there were issues with Morris over pay. Aon asserts, however, that the pay issues were caused by Morris and not any Aon payroll system failure. Aon further argues that the pay issues were rectified and that Morris' discharge from employment was not retaliatory but rather the result of poor performance by Morris and changed business needs which lead to corporate restructuring.

## LAW AND ANALYSIS

In her complaint, Morris brings two claims under the Fair Labor Standards Act ("FLSA"). *See* Pl.'s Am. Compl. at 5-7. First, Morris alleges that Aon violated the minimum wage provision of the FLSA when she did not receive her full and proper pay. *Id*. at 5. Second, Morris claims that her firing violated the FLSA because it was in retaliation for her pursuit of back pay. *Id*. In her response to this motion though, Morris concedes that Aon did not violate the minimum wage provision. Pl.'s Resp. at 14 n.22. Morris also concedes her public policy tort claim in her response, relying only on her FLSA retaliation and Michigan Whistleblowers Protection Act claims "which provide her exclusive remed[ies]." Pl.'s Resp. at 20. The following analysis will thus focus only on these two remaining claims.

I.  **Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

II.  **Retaliation under the Fair Labor Standards Act**

The FLSA provides, in relevant part, that, "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act . . . ." 29 U.S.C. § 215 (a)(3). The Sixth Circuit has established that, for a plaintiff to make a *prima facie* retaliation claim under the FLSA, he must show that: (1) he engaged in a protected activity under the FLSA; (2) his exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to [him]; and, (4) there was a causal connection between the protected activity and the adverse employment action. *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999)).

A.  *Protected Activity*

Here, Morris engaged in statutorily protected activity by instituting her complaints with the Wage and Hour Division on August 12, 2010. *See* 29 U. S. C. § 215(a)(3). Morris likely

engaged in protected activity even earlier, when she made internal complaints about her pay. *See Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004) (explaining that "the anti-retaliation provisions of the FLSA can be triggered by informal complaints" at work (citing *EEOC v. Romeo Cmty. Schs*, 976 F.2d 985, 989-90 (6th Cir. 1992))). In any event, Morris certainly engaged in protected activity by August 12, 2010, at the latest.

Aon argues that Morris did not engage in protected activity because her complaints "did not concern rights protected by the FLSA" and were "too vague to be understood by Defendants as an assertion of rights under the FLSA," thus failing the requirement that complaints be "sufficiently clear and detailed for a reasonable employer to understand . . . as an assertion of rights protected by the statute and a call for their protection." Defs.' Mot. at 15; *Kasten v. Saint-Gobain Performance Plastics Corp.*, __ U. S. __; 131 S. Ct. 1325, 1335; 179 L.Ed.2d 379 (2011).

However, these arguments are more germane to the issue of notice. Before turning to notice though, it should be noted that, at the very least, Morris' complaints to Wage and Hour on August 12, 2010, did indeed concern rights protected by the FLSA. At that time, Morris ostensibly thought that she had a minimum wage violation claim under the FLSA (a claim she only conceded on in her October 11, 2011 response). And Morris perhaps did or does have legitimate denial of overtime claims under the FLSA with which the Department of Labor seemed prepared to assist her. *See* Pl.'s Resp. at 15 n.24. Moreover, it is only necessary for plaintiffs to make good faith claims to establish a *prima facie* case, not that those claims ultimately be successful under the FLSA. *See EEOC v. Southeast Telecom*, 780 F.Supp.2d 667, 685-86 (M.D. Tenn. 2011) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000) (and noting that that FLSA and Title VII claims are analyzed identically)).

*B.	Notice*

Aon argues that Morris did not provide sufficient notice of her engagement in any FLSA protected activity and thus fails to satisfy the second factor of the Sixth Circuit test above. *See* Defs.' Mot. at 14-16. Aon reiterates the Supreme Court language from *Katsen, supra*, that a "complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statue and a call for their protection." *Kasten*, 131 S. Ct. at 1335; Defs.' Mot. at 15. Aon argues that Morris did not even mention Wage and Hour until an August 17, 2010 email, at the very earliest. Even at Morris' August 19, 2010 meeting with James Webb, the Chairman of her office, where Morris allegedly announced her external proceeding with Wage and Hour, she did not specifically mention that she was invoking FLSA rights or calling for their protection. Defs.' Mot. at 16; Pl.'s Resp. at 9 (explaining that Morris simply told Webb, "that she had no choice to but pursue a claim with Wage and Hour . . .").

Morris argues that Aon was clearly on notice and cites deposition testimony from Aon employees that she had "driven people crazy" at Aon with her pay complaints as evidence. Pl.'s Resp. at 17. Morris also cites her external complaint to Wage and Hour, her giving notice of that complaint to Webb, and her long record of internal complaints, including an August 13, 2010 email to her boss and the human resources manager which threatens legal action and references a 2007 email which expressly mentions filing claims with Wage and Hour and penalties under the FLSA. Pl.'s Resp. at 8 (citing Exhibits D and K).

While the *Katsen* decision, cited by Aon, requires that employers be given clear notice, it establishes that oral complaints can be sufficient notice in an FLSA retaliation claim. *Kasten*, 131 S. Ct. at 1325, 1335. In addition, the Sixth Circuit has held that even informal, internal

complaints are sufficient to satisfy the notice element. *Moore,* 355 F.3d at 562. It is clear from the record that Morris did make a number of internal complaints, both written and oral, about her pay to Aon. *See* Pl.'s Resp. at 4-10. Thus, in the light most favorable to Morris as the non-moving party, there is a genuine issue of material fact as to whether Morris gave sufficient notice of her grievances to Aon.

*C.     Adverse Action*

It is undisputed that Morris' August 27, 2010, discharge from employment with Aon was adverse to Morris and followed her August 19, 2010, conversation with Webb in which she announced her formal external proceedings with Wage and Hour.

*D.     Causation*

It is disputed, however, whether Morris was discharged *because* of her complaints over pay. Determining causation here ultimately turns on temporal issues related to notice. Aon argues, principally, that it could not have fired Morris because of her complaints over pay, because Aon was never legally on notice. *See* Defs.' Mot. at 15; *see also* Defs.' Reply at 3, 4. In the alternative, Aon argues that if Morris did provide legal notice, it was not until August 12, 2010, at the earliest, and that the decision to fire Morris had been made on August 9, 2010. Defs.' Mot at 16, 17; Defs.' Reply at 4, 5.

In support of this position, Aon argues that Morris' boss, Stankard, told the human resources manager that "he did not want [Morris] working for him anymore" on August 9, 2010, and that the human resources manager determined that day to eliminate Morris' employment with Aon. Defs.' Mot. at 6. Aon avers that the termination paperwork was completed and forwarded for legal review on August 11, 2010. *Id.* at 7. Morris was not notified of her

6

termination though until August 27, 2010, because, Aon argues, administrative details like rectifying Morris' pending pay complaints had to be completed first. *Id*. at 9-11.

As evidence that she was fired for her complaints over pay, Morris points to many internal complaints leading up to August 2011, her August 19, 2010 pre-termination conversation with Webb about pursuing her claims with Wage and Hour, and Webb's deposition testimony about a subsequent conversation with a managing director who indicated that Morris had "driven people crazy" with her pay complaints for a "very long time" and was going to be let go. Pl.s' Resp. at 4-10.

In reply, Aon simply argues that those conversations took place after the August 9, 2011 decision to fire Morris and "before [Morris] started blaming any issue on [Aon]." Defs.' Reply at 4. However, it is clear from the pleadings that Morris had been blaming her pay issues on Aon well before August 9, 2010. Moreover, the fact that Webb's conversation with the managing director occurred after Aon allegedly decided to fire Morris does not necessarily render it irrelevant or causally unrelated. The testimony is in dispute but it might easily be inferred that a "very long time" means before the alleged firing decision of August 9, 2010.

In fact, this testimony raises the inference that, contrary to Aon's assertions, Morris' numerous internal complaints leading up to August 2010 were indeed sufficient notice. Although precisely when Morris' complaints may have constituted notice is in dispute, Webb's testimony here may be sufficient direct evidence to establish *prima facie* causation without even needing to reach the *McDonnell-Douglas* burden shifting framework. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) (explaining that the *McDonnell-Douglas* analysis is used to reach inferential conclusions when only circumstantial evidence is shown).

Under such a framework, Morris has certainly shown enough circumstantial evidence from which this court can "draw reasonable inferences . . . to deduce a causal connection." *Pettit v. Steppingstone*, 2011 U.S. App. LEXIS 14025, at *23 (6th Cir. 2011). The Sixth Circuit has held that close temporal proximity between protected activity and firing is sometimes enough, by itself, to establish *prima facie* causation. *Hamilton v. General Electric Co.*, 556 F.3d 428, 435-36 (6th Cir. 2009). And here, like in *Hamilton*, Morris relies on more than just close temporal proximity; she also relies on Webb's testimony to establish a sufficient inference that she was being let go because she had driven people crazy with her pay issues for a very long time.

In an attempt to proffer legitimate, non-retaliatory reasons for Morris' firing pursuant to the *McDonnell-Douglas* burden shifting framework, Aon asserts that Morris was fired for poor performance and changing business needs which resulted in corporate restructuring. *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802 (1973) (explaining that the burden is first on the plaintiff to establish a *prima facie* case, then on the defendant to show non-retaliatory reasons for adverse action, and then back on the plaintiff to show that the defendant's proffered reasons are pretext).

Morris rebuts Aon's proffered reasons for her discharge as pretext on the grounds that she has a demonstrated record of high achievement, meritorious raises, bonuses, and favorable performance reviews. According to the Sixth Circuit, plaintiffs establish pretext "by showing that the reason offered by the defendant: (1) has no basis in fact; (2) did not actually motivate the decision not to promote, or (3) was insufficient to warrant the decision not to promote." *Grizzell v. City of Columbus Div of Police*, 461 F.3d 711, 720 (6th Cir. 2006) (citing *Zambetti v. Cuyahoga Cmt. College,* 314 F.3d 249, 258 (6th Cir. 2002)).

8

Together with her positive employment reviews, Morris establishes pretext here by pointing to the dearth in the record of documents showing a basis in fact for the alleged corporate restructuring. Pl.'s Resp. at 12. In reply, Aon cites points to an SEC filing which generally mentions job eliminations as part of a "global restructuring plan" which was nearly complete by the time of Morris' discharge. Defs.' Reply at 5 (citing Exhibit R). To Morris' knowledge, she was the only local employee affected by the global restructuring. Pl.'s Resp. at 1, 11, 18.

Moreover, the timing and delay in delivery of the August 12, 2010 "counseling memo" to Morris, which she received on August 24, 2010, regarding an alleged incident of poor performance on August 9, 2010 (the same date Aon claims to have made the decision to terminate Morris) are suspicious. Aon offers no explanation for the delayed delivery of this memo. Morris again cites her perennially good employment record and notes that even if Stankard did not want her working for him anymore, she worked for others as well and not exclusively for Stankard. *Id.* at 12.

On balance, Morris has shown genuine issues of material fact as to Aon's proffered reasons for discharge. Morris was a long-time employee with a generally positive record at Aon, and was the only employee in her office abruptly fired in a restructuring after engaging in protected activity. For all of the above reasons, the court will deny Aon's motion on the FLSA claim.

### III. Michigan Whistleblowers Protection Act

The Michigan Whistleblowers Protection Act ("WPA") provides, in relevant part, that:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee . . . because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body . . . .

M. C. L. § 15.362. A *prima facie* case under this Act requires a plaintiff to show that: (1) he was engaged in protected activity; (2) he was discharged or discriminated against, and; (3) a causal connection existed between the protected activity and the discharge or discrimination. *West v. General Motors Corp.*, 469 Mich. 177, 183-84; 665 N.W.2d 468 (2003). This is essentially the same test as the Sixth Circuit standard above for retaliatory discharge under the FLSA, and the parties assert basically the same arguments as above. There is a significantly distinct analytical point here though.

Aon argues that Morris' WPA claim should fail because she was motivated only to collect her proper pay and not out of a desire to protect or "'inform the public on matters of public concern.'" Defs.' Mot at 19 (citing *Shallal v. Catholic Soc. Servs.*, 455 Mich. 604, 621; 566 N.W.2d 571, 579 (1997)). In other words, Aon believes that the WPA requires plaintiffs to have the "altruistic motive of protecting the public," and that Morris lacks such motive. *Id.* at 622.

Morris argues that there is no such requirement for a WPA claim and cites *Phinney*, where a public university employee proceeded against the university under the Act on claims of misappropriated research, as standing for the proposition that the public good is "legally irrelevant" in WPA claims. *Phinney v. Verbrugge*, 222 Mich. App. 513, 554; 564 N.W.2d 532, 555 (1997).

Although the case law is not uniformly clear, it appears that "the WPA does not require that the plaintiff possess any particular intent when making her report." Pl.'s Exhibit T (*Johnson v. County of Jackson*, 2003 Mich. App. LEXIS 2207, at *3 (Mich. Ct. App. Sept. 11, 2003)). There is no rule from *Burton*, as Aon tries to advance, that a WPA claim fails if the plaintiff

intends to "advance his own financial interests" rather than "inform the public on a matter of public concern." Defs.' Mot. at 19 (citing Exhibit N, *Whitman v. City of Burton*, 2011 Mich. App. LEXIS 1239, at *10 (Mich. Ct. App. July 5, 2011)). *Burton* simply reiterates that the broadest purpose of the WPA, protecting the public, is achieved by prohibiting employers from retaliating against employees who "report violations or suspected violations of the law." *Id*. at *11-12. Reporting employees themselves are thus directly protected from retaliation by the WPA, and the general public is protected from "large-scale and potentially dangerous abuses" as a result of the reporting. *Id*. at *11 (citing *Dolan v. Continental Airlines/Continental Exp.*, 454 Mich. 373, 378-79; 563 N.W.2d 23 (1997)).

The only clear limitation is that a WPA claim must be made in good-faith and not "used as an offensive weapon by disgruntled employees," like in *Burton* and *Shallal* where there was evidence that the plaintiffs strategically invoked the WPA to preserve their own jobs. *Shallal* 455 Mich. at 622. There is no such evidence here. The record does not suggest, nor does Aon even argue, that Morris brings her claims in anything other than good-faith, let alone "out of personal vindictiveness" or an effort to "extort" Aon. *Id*. at 621-22. Thus, Morris has established a *prima facie* claim under the WPA which Aon has not successfully rebutted. The court will therefore deny Aon's motion here as well.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendants' September 1, 2011 motion for summary judgment is DENIED.


Date: November 22, 2011                                s/John Corbett O'Meara
                                                       United States District Judge




I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date, November 22, 2011 using the ECF system.


                                                       s/John Corbett O'Meara
                                                       United States District Judge